IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

WEST VIRGINIA INDUSTRIAL PARKS
SALES AND MANAGEMENT CORPORATION,

    Plaintiff,

v().                                                         Civil Action No. 3:24-cv-00217

ERIE INSURANCE PROPERTY &
CASUALTY COMPANY,

    Defendant.

## COMPLAINT

**NOW COMES** Plaintiff West Virginia Industrial Parks Sales and Management Corporation, through undersigned counsel, and hereby files this Complaint for breach of first party insurance contract, common law bad faith, violations of the West Virginia Unfair Claims Practice Act, West Virginia Code § 33-11-1, *et seq*. and for a declaration, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and West Virginia's Uniform Declaratory Judgements Act, West Virginia Code § 55-13-1, *et seq*., that the insurance policy between Plaintiff and Defendant Erie Insurance Property and Casualty Company (hereinafter referred to as "Erie") provides insurance coverage for certain property damage sustained by the Plaintiff as the result of windstorm damage to the Plaintiff's property. In support thereof, Plaintiff state as follows:

    1.    Plaintiff West Virginia Industrial Parks Sales and Management Corporation is a West Virginia corporation with its principal place of business in Huntington, Cabell County, West Virginia.

    2.    Erie is a Pennsylvania corporation with its principal place of business in Erie, Pennsylvania, and issued an insurance policy to the Plaintiff in Huntington, WV providing

1

insurance coverage for certain damages sustained by the Plaintiff in a windstorm on or about April 8, 2023.

3. This Court has subject matter jurisdiction over this action, in accordance with 28 U.S.C. § 1332, because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00) and the parties are citizens of different states.

4. The Court has personal jurisdiction over Defendant Erie because at all relevant times it has engaged in substantial business activities in Cabell County, West Virginia. Defendant Erie is not a citizen of West Virginia; however, it has, at all relevant times, transacted, solicited, and conducted business in Cabell County, West Virginia through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in West Virginia. The insurance policy naming the Plaintiff as insured was issued in Huntington, West Virginia to the Plaintiff by the Defendant.

5. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this judicial district including but not limited to the purchase of the insurance policy, breach of the insurance policy, bad faith conduct of Erie and Unfair Trade Practices of Erie as set forth hereinafter. Plaintiff further asserts that under 28 U.S.C.§ 1391(d) Erie is a resident of this judicial district.

6. Prior to April 8, 2023, Plaintiff purchased an Erie insurance policy in Huntington West Virginia through United Security Agency located at 103 Eighth Avenue in Huntington, West Virginia, 25701 and was insured through Erie insurance policy, Q37 8050074 W, issued by Defendant Erie in Cabell County, West Virginia, with effective dates of January 30, 2023, to January 30, 2024.

7. As part of this insurance policy, Plaintiff also purchased and received the Ultraflex Commercial Policy which contains coverage for property coverage for physical loss/damage to Buildings due to a wind/storm.

8. Section I of the Erie insurance policy entitled - Coverages provides "[*w*]*e will pay for direct physical 'loss' of or damage to covered property at the premises described in the 'Declarations' caused by or resulting from a peril insured against.*"

9. Section 1 A of the insurance policy provides BUILDING(S) – COVERAGE 1 A. Covered Property Building(s) means buildings described in the "*Declarations*" and anything permanently attached.

10. The Building insured under the insurance policy was described in the Declarations and renewals thereof.

11. Pursuant to the terms of the insurance policy, Erie was obligated to pay for the cost to properly repair the damaged roof in excess of the Plaintiff's deductible.

12. This policy hereby is incorporated in full by reference as if each and every policy term, addendum and endorsement is plead in full and further provides in pertinent part that:

> **SECTION II - PERILS INSURED AGAINST**
>
> **BUILDING(S) - COVERAGE 1**
>
> **BUSINESS PERSONAL PROPERTY AND PERSONAL PROPERTY OF OTHERS – COVERAGE 2**
>
> **ADDITIONAL INCOME PROTECTION - COVERAGE 3**
>
> **Covered Cause of Loss**
>
> This policy insures against direct physical "loss", except "loss" as excluded or limited in this policy.

13. On or about late March 2023, as reported by the weather service, there were severe windstorms at and around the insured building with winds reaching up to and over 60 miles per hour. In pertinent part, these wind/storms damaged the rubber roof, underlying insulation board and caused physical damage and separation of the roof from its support structure.

14. The damaged roof immediately was noticed and reported by an employee of Lockheed Martin, the building tenant.

15. Plaintiff, through its insurance agent in Huntington, West Virginia, promptly reported the wind/storm damage to Erie with a reported date of loss of April 8, 2023 and Erie conducted a review of the Plaintiff's reported insurance claim.

16. Thereafter, Erie's Property Adjuster II requested, Solid Ground Engineering and Inspections ("Solid Ground") to perform a May 30, 2023, inspection to assess the damages to the roof of the property after the wind/storm. This inspection was of readily observable surfaces and did not include destructive testing. Erie obtained this inspection report on June 13, 2023 and used it as a basis to deny the Plaintiff's insurance claim, even though the inspection report recognized and advised Erie of the extremely high winds and storms and damage to the building roof. The inspection report improperly concluded the roof damage, after the high winds and storm, were age-related.

17. On June 21, 2023, the Plaintiff submitted a rebuttal report from Tudor Roofing Company, Inc. ("Tudor Roofing"), a Huntington roofing company that previously had done work on the subject roof and thereafter inspected the roof. Tudor Roofing's report indicated as follows:

> 1) Right side of flat roof was coated and completed October, 2022 and roof insulation was lying flat on roof deck. There was no evidence of insulation out of position.
>
> 2) High winds occurred as stated on the wind verification report shown on page 4. The dates: March 3, 2023 57 mph wind... March 25, 2023 66 mph wind... April 1, 2023 58 mph wind.
>
> 3) These documented wind speeds are strong enough to cause wind uplift between roof deck and attached roof insulation.
>
> 4) Roofing manufacturers will not guarantee roofs when speeds exceed 55 mph
>
> 5) We do not agree with Item #3 on page 7. Please see our comment above: there was no damage to roof system on October 2022.
> 6) We disagree with item #5 on page 7 -Professional Opinions and Conclusions Statement.... Wind uplift is the only way this could have occurred.

This report was ignored by the Defendant and the information contained therein was not properly or timely considered or investigated by Erie.

18. Plaintiff obtained and provided to Erie a damage estimate from Tudor Roofing, which had worked on and installed the roofing sealant in 2022. This report sets forth that the roof was damaged by the wind/storm in or about late March 2023 and sets forth how the roof was damaged. Erie refused to pay for the estimated amount of the damage caused by the wind/storm.

19. Instead of properly paying the insurance claim or considering the rebuttal report, on or about June 23, 2023, the Defendant, through its employee/adjuster, issued its claim denial in a letter sent to the Plaintiff. In the claims denial, Erie's Property Adjuster II, without full and proper explanation and despite Tudor Roofing's rebuttal report, refused to pay for the roof damage. In order to deny this part of the claim, Erie's Property Adjuster II falsely stated in misleading language that the damage to the roof was not related to the wind/storm claim and

5

there was no coverage for the damage. Erie's Property Adjuster II also (a) ignored and did not properly consider the part of the report that documented high winds and roof damage to the Plaintiff's building; (b) denied the claim as the damage being age related even though the rubber roof was not old; (c) refused to review and investigate the explained causes of the wind damage; and (d) misrepresented the terms and applicability of coverages and exclusions in the insurance policy.

20. Erie issued this claim denial, even though Plaintiff requested full and proper payment of roof damage as covered by the insurance policy and provided evidence in support of the claim. Plaintiff even provided Defendant with evidence of roof damage, documentation of extremely high winds at the time in question and estimates of roof damage. Plaintiff also provided Defendant with an eyewitness statement that the roof was not damaged prior to the storm and that the damage caused to the roof was from the recent wind/storm. Despite this evidence, Defendant Erie willfully, wrongfully and in bad faith denied Plaintiff's claim.

21. Erie ignored and did not properly investigate clear information which supported the wind/storm claim and related roof damage and wrongfully denied these aspects of the claim again and otherwise failed to provide coverage or benefits as required under the Erie policy.

### COUNT I - BREACH OF FIRST PARTY INSURANCE CONTRACT
### AGAINST ERIE INSURANCE PROPERTY AND CASUALTY COMPANY

22. Plaintiff incorporates all of the previous paragraphs of this Complaint, as if fully set forth herein, which substantiate Plaintiff's claims for relief.

23. Plaintiff and Defendant entered into an insurance contract.

24. Plaintiff purchased, and was insured, through a purchased insurance policy including but not limited to insurance policy Q37 8050074 W issued by Defendant Erie with effective dates on or about January 30, 2023, to January 30, 2024, together with its stated

coverage parts, endorsements, declarations, renewals all of which will be referred to in this complaint as the "Insurance Policy."

25. On or shortly before April 8, 2023, a wind/storm damaged the roof at Plaintiff's building located at 50 Bridgeport Hill Road in Clarksburg, Harrison County, West Virginia (26301).

26. The damage was immediately noticed by a tenant of the building and reported.

27. Damages from the wind/storm included, but are not limited to, damage to the rubber roof, insulation board, support structure and structural separation.

28. The terms and conditions of the Insurance policy obligate Erie to pay for the roof damage.

29. Defendant has wrongfully failed and refused to pay for the wind/storm damage to the roof of Plaintiff's building as required by the terms and conditions of the Insurance Policy and therefore has breached the policy of insurance coverage.

30. The failure to pay for the damage to the roof, as required by the Insurance Policy, constitutes a breach of contract by Defendant Erie which has proximately caused harm to Plaintiff.

31. Defendant Erie's refusal to pay the Plaintiff for the repair of the damaged roof based upon the misrepresentations and policy language set forth in the June 23, 2023, denial letter sent to the Plaintiff by Erie constitutes a breach of the terms of the Erie insurance policy.

32. Defendant failed to provide the insurance coverage, benefits and rights as set forth in the Insurance Policy. This conduct by Defendant constitutes breach of the first party insurance contract between the parties.

33. As a direct and proximate cause result of Defendant's breach of the Insurance Policy, Plaintiff incurred damages and seeks coverage under the insurance policy, reasonable attorney fees and costs, consequential damages, payment for Plaintiff's insurance claims, prejudgment and post judgment interest, damages for breach of contract and all damages recoverable under West Virginia law.

## COUNT II - COMMON LAW BAD FAITH

34. Plaintiff incorporates all the previous paragraphs of this Complaint, as if fully set forth herein, which substantiate Plaintiff's claims for relief.

35. Defendant Erie owed a duty of good faith and fair dealing to their insured West Virginia Industrial Parks Sales and Management Corporation to assure that the insured received the full and proper benefits of the Insurance Policy.

36. On June 23, 2023, Defendant sent a formal denial of coverage denying coverage for the roof damage to Plaintiff's roof.

37. The June 23, 2023, denial letter wrongfully and in bad faith denied the Plaintiff's claim for covered damages, which were specifically covered under the Insurance Policy issued by Defendant.

38. Defendant failed to act with good faith and fair dealing in issuing the denial letter and in denying the Plaintiff's claim for insurance coverage and benefits. The denial letter was made in bad faith, without a reasonable justification for denial of coverage, and was done willfully, wantonly, and with malice.

39. The conduct of Defendant, in denying the Plaintiff's rightful insurance coverage and benefits under the Insurance Policy as set forth in the denial letter dated June 23, 2023,

breached the terms and conditions of the Insurance Policy also constitutes the tort of common law bad faith under the laws of West Virginia.

40. Defendant wrongfully and maliciously refused to provide insurance coverage to Plaintiff under the Insurance Policy and breached the duty of good faith and fair dealing and acted with bad faith and malice in its refusal to properly and reasonably process, investigate and pay the insurance claims of Plaintiff.

41. Defendant misrepresented and concealed the nature and extent of the subject insurance coverage and provided false, misleading and deceptive information and representations in its claim denial letter, coverage denial and communications with Plaintiff with regard to the property damage claim submitted by Plaintiff under the Insurance Policy.

42. Erie failed to conduct an adequate thorough investigation to determine the applicable policy benefits due and owing; refused to pay applicable policy benefits without a valid factual or legal basis to support such denial; and favored its own interests in denying payment over the interests of its insured, the Plaintiff.

43. From its initial notification of the claim, Erie has acted willfully, intentionally and maliciously, predetermined to delay and deny payment of all applicable benefits due and owing the Plaintiff. Erie denied the wind/storm damage even though it had actual knowledge there were severe winds occurring that likely would cause roof damage and that did cause damage in surrounding areas; had actual knowledge that the storm constituted a covered loss; and actual knowledge the Plaintiff's roof did sustain wind and structural damage.

44. Plaintiff sustained damages as a direct and proximate cause of Defendant's bad faith conduct and is entitled to extra contractual damages, punitive damages, payment for

Plaintiffs insurance claims, reasonable attorneys' fees and costs, damages for aggravation, annoyance and inconvenience as well as for damages under the Insurance Policy.

## COUNT III - DECLARATORY RELIEF

45. Plaintiff incorporates the above paragraphs of this Complaint, as if fully set forth herein, which substantiate Plaintiff's claims for relief.

46. The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Additionally, the DJA provides for "[f]urther necessary or proper relief" following a favorable decision in a declaratory judgment.

47. Consequently, Plaintiff is entitled to a declaration, pursuant to 28 U.S.C. §2201, that the subject Erie policy provides insurance coverage to Plaintiff for the windstorm claim related damage to the roof as covered by the Insurance Policy.

48. Likewise, West Virginia's Uniform Declaratory Judgments Act, West Virginia Code § 55-13-1, *et seq.*, provides that "[a]ny person interested under a . . . written contract, or other writings constituting a contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status or other legal relations thereunder." A justiciable controversy, such as the aforementioned insurance coverage dispute, exists for purposes of a declaratory judgment action when a legal right is claimed by one party and denied by another. *See West Virginia Utility Contractors Ass'n v. Laidley Field Athletic and Recreational Center Governing Bd.*, 164 W.Va. 127, 260 S.E.2d 847 (1979); *See also Trail v. Hawley*, 163 W.Va. 626, 259 S.E.2d 423 (1979); *See Robertson v. Hatcher*, 148

W.Va. 239, 135 S.E.2d 675 (1964) (Actual controversy susceptible of judicial determination exists when legal right is claimed by one party and denied by another party to declaratory judgment proceeding.); *See also Board of Ed. of Wyoming County v. Board of Public Works*, 144 W.Va. 593, 109 S.E.2d 552 (1959).

49. Consequently, Plaintiff is entitled to a declaration, pursuant to West Virginia Code §55-13-1 and 28 U.S.C. §2201, that (1) the subject Erie policy provides insurance coverage to Plaintiff for the wind/storm claim related damage to the roof sustained by Plaintiff as covered by the Insurance Policy; (2) Defendant wrongfully denied insurance coverage for this damage sustained by Plaintiff; and (3) Plaintiff is entitled to payment from Defendant for damages under the Insurance Policy.

## COUNT IV - VIOLATIONS OF UNFAIR TRADE PRACTICES ACT

50. Plaintiff incorporates the above paragraphs of this Complaint, as if fully set forth herein, which substantiate Plaintiff's claims for relief.

51. Defendant violated the West Virginia Unfair Trade Practices Act in its dealings with Plaintiff.

52. Prior to April 8, 2023, Plaintiff purchased insurance coverage for its building from Erie.

53. Erie and the Insurance Policy represented the coverage sold Plaintiff would cover certain property damage of the insured property.

54. Defendant misrepresented the benefits, advantages, terms and conditions of the Insurance Policy in its Claim Decision letters, Insurance Policy, coverage denials and communications with Plaintiff.

55. Defendant misrepresented and concealed the nature and extent of the subject insurance coverage and provided false, misleading and deceptive information and representations in its denial letter, coverage denial and communications with Plaintiff with regard to the property damage claim submitted by Plaintiff under the Insurance Policy.

56. Upon information and belief, Erie has a pattern and practice of selling such policies and making false and misleading representations and promises so as to indicate a general business practice.

57. Erie violated the provisions of West Virginia Code §33-11-1, *et seq*., and did so with such frequency as to indicate a general business practice in that it misrepresented and/or concealed the pertinent factors or insurance policy provisions relating to the coverage issue.

58. Erie breached its duty of fair trade practices through its acts, omissions and conduct of selling insurance policies, wrongful denials of such claims and misrepresenting the coverage, benefits and advantages therein.

59. Erie failed to undertake prompt and reasonable efforts to evaluate, negotiate and adjust Plaintiff's claim for coverage benefits or, in the alternative, did evaluate said claim and after said evaluation made a deliberate wrongful choice to deny coverage.

60. Erie failed to undertake an adequate investigation of Plaintiff's claim or, in the alternative, did undertake an adequate investigation which it then purposely ignored; failed to undertake settlement negotiations in good faith; and as a result, forced Plaintiff to proceed with litigation.

61. The acts and omissions of Erie, by and through its agents and representatives in handling of Plaintiff's claim violated West Virginia Code §33-11-1, *et seq*.

62. The acts and omissions of Erie, by and through their agents and representatives, in the handling of Plaintiff's claim violated West Virginia Code §33-11-4(9) in the following particulars: failing to acknowledge and act reasonably and promptly upon communications with respect to the claim arising under Plaintiff's insurance policy; failing to adopt and implement reasonable standards for the prompt investigation of claims under insurance policies; refusing to pay Plaintiff's claim without conducting a reasonable investigation based upon all available information; not attempting in good faith to effect prompt fair and equitable settlement of Plaintiff's claim even though liability was clear; compelling Plaintiff to file suit to recover amounts payable under the policy; and failing to promptly provide a reasonable explanation for the denial of Plaintiff's claim.

63. The acts and omissions of Erie, by and through its agents and representatives, in handling Plaintiff's claim were committed and/or performed with such frequency as to indicate a general business practice and constitutes unfair claims settlement practices.

64. The acts and omissions of Erie, by and through its agents and representatives, in the handling of Plaintiff's claim were intentional, willful, and outrageous in character and were done in bad faith without regard to the rights of Plaintiff. Likewise, Erie acted with actual malice toward Plaintiff or with a conscious, reckless and outrageous indifference to the health, safety and welfare of others.

65. Erie further violated W. Va. Code Section 33-11-4(9) by (1) denying the claim of the Plaintiff even though Erie had knowledge of the severe wind storms and that the Plaintiff's roof sustained damage; (2) misrepresenting and concealing pertinent facts concerning the insurance claim including misrepresenting that the damage to the roof was not caused by the

wind storm and (3) failing to provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of the claim of the Plaintiff.

66.     The acts and omissions of Erie, by and through its agents and representatives, are so outrageous that Plaintiff is entitled to recover punitive damages from Erie in order to punish Erie and to deter them and other insurance companies from engaging in similar conduct in the future.

67.     As a result of the intentional, willful and malicious Unfair Trade and Settlement Practices of Erie, Plaintiff is entitled to recover compensatory and general damages as a result of said conduct, and is entitled to punitive damages, reasonable attorney fees and costs.

**WHEREFORE**, Plaintiff West Virginia Industrial Parks Sales and Management Corporation requests damages for the claims and damages set forth in this Complaint and including, but not limited to, all actual damages, consequential damages, reasonable attorney fees and costs, punitive damages, payment in full of Plaintiff's insurance claims, pre and post judgment interest, as well as all damages under West Virginia statutory and common law together with declaratory relief as follows:

1.     Enter Judgment against Defendant for breach of insurance contract and to make a determination that Plaintiff has substantially prevailed;

2.     Enter a declaration that the damage to the roof on Plaintiff's is covered by the Insurance Policy issued by Defendant and was wrongfully denied by the Defendant;

3.     Compensatory damages against Defendant Erie for breach of the insurance policy, common law bad faith, violations of the Unfair Trade Practices Act;

4.     An award of punitive damages against Erie and an award of the Plaintiff's attorney fees as well as prejudgment and post judgment interest;

5. Plaintiff requests, in accordance with West Virginia Code § 55-13-10, that the Court make an award for its equitable and just costs and/or reasonable attorney fees and for "[f]urther necessary or proper relief" under 28 U.S.C. § 2202; and

6. Award such other and further relief as the law and the facts may show to be just and proper, including, but not limited to, a jury trial.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

**Dated: April 26, 2024**                    **WEST VIRGINIA INDUSTRIAL PARKS SALES AND MANAGEMENT CORPORATION**
By Counsel,

/s/ David R. Barney, Jr.
David R. Barney, Jr., Esquire (W.Va. Bar No 7958)
Thompson Barney
2030 Kanawha Boulevard, East
Charleston, West Virginia 25311
Telephone: (304) 343-4401
Facsimile: (304) 343-4405
drbarneywv@gmail.com

John W. Alderman, III, Esquire (W.Va. Bar No. 6216)
Law Offices of John W. Alderman
3 Monticello Place
Charleston, West Virginia  25314
Telephone: (304) 531-8029
Facsimile: (877) 350-6643
johnalderman94@gmail.com