IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

WEST VIRGINIA INDUSTRIAL PARKS
SALES AND MANAGEMENT CORPORATION,

      Plaintiff,

v.             CIVIL ACTION NO. 3:24-0217

ERIE INSURANCE PROPERTY &
CASUALTY COMPANY,

      Defendant.

**MEMORANDUM OPINION & ORDER**

Pending before the Court is Erie Insurance Property & Casualty Company's Motion for Partial Summary Judgment (ECF No. 92). For the reasons that follow, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

**BACKGROUND**

This case arises out of a claim submitted to Erie Insurance Property & Casualty Company for alleged wind damage to a rubber roof at a building in Clarksburg, West Virginia owned by West Virginia Industrial Parks Sales and Management Corporation (WVIP). Compl.; Def.'s Ex. 1. On April 26, 2023, Erie received notice of the claim and assigned it to adjuster Paul Gray. *Id.* WVIP contacted its roofing company, which had resurfaced the roof along with another roofing company in late 2022. Pl.'s Ex. 3 (WVIP Dep.) at 12-15. After WVIP submitted an estimate from its roofer in May, Erie hired a professional engineer to conduct an inspection of the roof.[1] Def.'s

---

[1] Erie hired a professional engineer named Jared Gray. To avoid confusion with insurance adjuster Paul Gray, this opinion does not refer to Jared Gray by his name.

Ex. 5. Gray noted in the claim file: "Insured/contact person advised that they did want or allow anyone to inspect who was not OSHA certified." *Id.* Gray also submitted a request for "building reserves" "following 5,000 deductible." *Id.*

The engineer completed his report on June 13, 2023. Def.'s Ex. 2. He opined that, although storms with high wind speeds occurred in the area in recent months, the roof was damaged due to "age related deterioration," "thermal movement," ponding of water on the roof, "and failure of the adhesive/fastening between the roof decking and the roofing underlayment materials." Def.'s Ex. 6. The report included Google Earth photos from November 2013, showing "puddles and standing water . . . considered to be evidence that loose roofing materials and insufficient slope of the roofing materials has been present for years." Pl.'s Ex. 6.

Gray noted in the claim file: "Based on findings of engineer, there is no wind damage to roof. The issues are the result of age related deterioration of the roof." Def.'s Ex. 5. Gray emailed the report to WVIP on June 15, 2023. Def.'s Ex. 2. The next day, he left a message for WVIP indicating that the claim would be denied. *Id.* On June 20, Gray completed a closing checklist in the claim file. He noted: "Discussed settlement with insured? Yes," Def.'s Ex. 5. Gray testified that he did not discuss a settlement other than denial. Pls.' Ex. 1 (Gray Dep) at 129-131, 149-152; *see also* Pl.'s Ex. 2 (Boyd Dep.) at 107 (agreeing with Gray testimony).

On June 23, 2023, Erie sent a denial letter to WVIP. This letter stated that Erie's engineer "has reported to have found no wind/storm-related damages to the exterior or roofing surfaces. The cause of the loose, uneven and lifted roofing materials is age-related, deterioration and movement of the roofing." Def.'s Ex. 8. The letter further stated that "these specific causes of loss is excluded from coverage" and directed WVIP to the following language in the insurance policy:

> I. Coverages 1, 2, 3, 4, and 5
> We do not cover under Building(s) - Coverage 1; Business Personal Property and Personal Property Such "loss" or damage is excluded regardless of any cause or event that contributes concurrently or in any sequence to the "loss":
> 1. Deterioration or depreciation.
> 3. "Loss" or damage caused by or resulting from any of the following:
>> a. By weather conditions, but only if weather conditions contribute in any way with a peril excluded in Part A. of Section III - Exclusions to produce the "loss";
>> b. By acts or decisions, including the failure to act or decide, of anyone;
>> c. By faulty, inadequate, or defective:
>>> 1) Planning, zoning, development, surveying;
>>> 2) Design, specifications, workmanship, repair, construction, renovating, remodeling, grading, or compaction;
>>> 3) Materials used in repair, construction, renovation, or remodeling; or
>>> 4) Maintenance;
>
> of property whether on or off the insured premises by anyone, but if "loss" by a peril insured against results, we will pay for the ensuing "loss".
>
> II. Coverages 1, 2, and 3
> We do not cover under Building(s) - Coverage 1, Business Personal Property and Personal Property of Others - Coverage 2, and Additional Income Protection - Coverage 3 "loss" or damage caused:
> 1. By:
>> a. Wear and tear, rust, or corrosion;
>> b. Change in flavor, color, texture, or finish;
>> d. Inherent vice;
>> f. Latent or hidden defect;
>> g. Marring or scratching;
>> i. Settling, cracking, shrinking, bulging or expansion of pavements, foundations, walls, floors, roofs, or ceilings;

*Id.* The letter continued: "Based on the exclusions that are listed above, we respectfully deny payment for your claim." *Id.*

On the same day, WVIP provided Erie a response letter from its roofer responding to the engineer's report, stating that there was no damage to the roof as of October 2022, and stating that recent winds were strong enough to "cause wind uplift between roof deck and attached roof insulation." Def.'s Ex. 9. In response, Erie agreed to a reinspection. Gray was not able to attend the inspection. Def.'s Ex. 5. On July 17, 2023, the professional engineer emailed WVIP and its roofer:

> Thank you for meeting me at the Lockheed facility last Thursday to take another look at the right side flat roofing. To summarize our visit, we accessed and observed the roof and the shop area beneath the right side flat roof. I did not find any additional information or observe any conditions that alter my stated opinions. I would gladly review any additional information or photographs that you may have in regards to the right side flat roofing.

Def.'s Ex. 13. Gray emailed WVIP on the same day: "At this time, this concludes our investigation into this loss." *Id.* Gray testified that he did not personally look at the roof, even though he generally did so when feasible. Pl.'s Ex. 1 (Gray Dep.) at 17. Gray did not conduct interviews about the roof with anyone who worked in the building, any roofers who recently worked on the building, or the owner of WVIP. Gray Dep. at 15-17. One man who worked at the building later testified that he saw the roof move during a storm in March 2023. Pl.'s Ex. 7 (Petracca Dep.) at 30-31 (describing the movement as like paper flapping).

WVIP's insurance agent emailed Gray in September to request a supervisor review the denial. Def.'s Ex. 14. The agent wrote:

> [W]hat started this investigation from the beginning was his tenant, Lockheed Martin was on the doing routine maintenance on the roof, as they do monthly. They had just experienced a storm in the area and the tenant noticed an area of the roof that looked damaged, that had not been there before. They called their roofer, who has worked on the roof for several years. The roofer stated that the he had put a sealant on the roof last year and this damage was not on the roof then. He then went inside and went up under the dropped ceiling and discovered the roofing materials underneath the roof had been blown out of place and causing the damage to the roof. Again he said it was not there last year when he worked on the roof. He gave his professional opinion that he thought somehow the 65mph winds that had blown through the area days before could have gotten in and blown up through the ceiling tiles causing the damage. That is when they called my insured, the owner of the building, to tell him what had happened and he filed the claim.

*Id.* Gray's supervisor emailed the insurance agent two days later. Def.'s Ex. 15. He "reviewed the file including the initial engineer's inspection report, photos, subsequent inspection, and satellite imagery of the insured location prior to the reported," and the "decision remain[ed] the same." *Id.* On April 26, 2024, WVIP filed suit.

-4-

**STANDARD**

To obtain summary judgment, the moving party must show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

The moving party has the burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. The Court does not resolve disputed facts, weigh the evidence, or make determinations of credibility. *See Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986).

**DISCUSSION**

Erie moved for partial summary judgment as to Plaintiff's Unfair Trade Practices Act claims, under West Virginia Code §§ 33-11-4(9)(a), (b), (c), (d), (f), (g), and (n), and the punitive damages claim. Def.'s Mot. at 1; Def.'s Mem. at 7. At the hearing, Plaintiff conceded that §§ 33-11-4(9)(b), (c), (d), and (f) were not applicable.

**I.  Unfair Claims Settlement Practices**

Plaintiff opposed Defendant's motion for summary judgment on claims under the following provisions of the Unfair Trade Practices Act:

> (9) *Unfair claim settlement practices.* -- No person shall commit or perform with such frequency as to indicate a general business practice any of the following:

> (a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue; . . .
> (g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered; . . .
> (n) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement;

W. Va. Code §§ 33-11-4(9)(a), (g), and (n). "More than a single isolated violation" is necessary to maintain an action under these provisions. Syl. Pt. 3, *Dodrill v. Nationwide Mut. Ins. Co.*, 491 S.E.2d 1 (W. Va. 1996) (quoting *Jenkins v. J.C. Penney Cas. Ins. Co.*, 280 S.E.2d 252 (1981)). Evidence "in a single claim case . . . should be such that the finder of fact, viewing the conduct as a whole, is able to conclude that the practices constitute multiple violations of the statute and are sufficiently pervasive or sufficiently sanctioned by the insurance company that the conduct can be considered a 'general business practice.'" *Id.* at 13.

Plaintiff argues that the denial letter constituted an unfair trade practice because it pointed to "approximately 46 alleged exclusions as to why Plaintiff's insurance claim was denied." Pl.'s Resp. at 12. Doing so "misrepresented the exclusions and applicability to the insurance claim." *Id.* Likewise, Plaintiff argues that listing the provision related to "depreciation" constituted an unfair practice. *See* Pl.'s Ex. 4 (Hawk Dep.) at 42 (noting the depreciation exclusion does not apply in West Virginia). At the hearing, Erie stated that including the entire section surrounding the insurance policy exclusion, and not just the applicable exclusion, is the company's general practice. Plaintiff argues that this practice and other evidence, such as the insurance adjuster's failure to inspect the roof, show that Erie violated the Unfair Trade Practices Act. The parties' disagreements as to the Unfair Trade Practices Act violation center on factual disputes. Summary judgment is not appropriate. Erie's motion for summary judgment is **DENIED** as to Count IV

(Violations of Unfair Trade Practices Act) insofar as WVIP may proceed on its claim under West Virginia Code §§ 33-11-4(9)(a), (g), and (n).[2]

## II.   Punitive Damages

WVIP argues "Erie's willful and malicious conduct and indifference warrants punitive damages pursuant to" *Hayseeds*. Pl.'s Resp. at 5-6 (citing *Hayseeds, Inc. v. State Farm Fire & Cas.*, 352 S.E.2d 73, 80 (W. Va. 1986)). WVIP ties its punitive damages arguments to two allegedly malicious acts: (1) Paul Gray's "falsification" of the claim file, including the note that he discussed settlement with the insured, and (2) the use of old Google Earth photos to depict the roof. Pl.'s Resp. at 5-14. Regardless of whether a malicious intent or conscious disregard standard applies, neither of these acts is sufficient to maintain a claim for punitive damages.

First, it is obvious from the deposition transcript that Gray did not understand the term "settlement" to mean that the insurer offered the insured a monetary settlement. He testified that he understood his note to mean that he discussed the disposition of the claim:

> Q: Are you saying that you interpreted "discussed settlement with insured" to mean closed out file?
> A: I interpreted it as discussed the disposition.
> Q: You testified earlier that you made a false statement; is that correct?
> A: I made a false statement in that –
> Q: You made a false statement, "yes" or "no"?
> A: Yes.
> Q: And did you discuss settlement with the insured? And you know what settlement is; right? You have been doing this for 30 years.
> A: No, apparently I don't know what settlement means in the course of this. It is discussing the course of action, the finality of it. That is what I read it as and apparently I am wrong.

Gray Dep. at 151. Likewise, Gray did not falsify anything in the claim file to excuse his failure to personally inspect the roof. Plaintiff argues that Gray noted in the claim file that an OSHA

---

[2] At the hearing, the Court instructed the parties that certain facts were not relevant to the Unfair Trade Practices Act claim.

certification was required to inspect the roof. Pl.'s Resp. at 7-8. Plaintiff points out that Gray later agreed to meet WVIP's owner to inspect the roof. *Id.* Although Gray did not appear to inspect the roof, he did not cite the OSHA certification issue as justification. The fact that Gray "no-showed" WVIP's owner is not enough to maintain a claim for punitive damages. *Id.* at 8.

Second, the engineer's report clearly states that the Google Earth photos were taken in 2013. Those photos were "considered to be evidence that loose roofing materials and insufficient slope of the roofing materials has been present *for years*." Pl.'s Ex. 6 (emphasis added). The report did not present those photos as showing a recent depiction of the roof.

Finally, Erie's denial of the claim for an allegedly improper reason is not sufficient to assert a claim for punitive damages. *See* Pl.'s Resp. at 10-11. The Court **GRANTS** summary judgment as to Plaintiff's punitive damages claim.

## CONCLUSION

Erie's Motion for Partial Summary Judgment (ECF No. 92) is **GRANTED IN PART** and **DENIED IN PART**. Erie's motion for summary judgment is **DENIED IN PART** as to Count IV (Violations of Unfair Trade Practices Act) under West Virginia Code §§ 33-11-4(9)(a), (g), and (n) and **GRANTED IN PART** as to Count IV under West Virginia Code §§ 33-11-4(9)(b), (c), (d), and (f). Erie's motion is **GRANTED IN PART** as to the punitive damages claim. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: August 1, 2025

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE